UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN THE MATTER OF THE PETITION
FOR ADMISSION OF FRANK L.
LAWRENCE, JR.
_____/

Case No. 1:17-mc-0098
Administrative Order No. 21-AD-028

**MEMORANDUM OPINION AND ORDER
DENYING RE-APPLICATION FOR ADMISSION**

Mr. Lawrence never misses an opportunity to miss an opportunity. A little more than three years ago, Mr. Lawrence submitted a petition for admission to this Court. Given the fact of Mr. Lawrence's prior misdemeanor conviction, the Chief Judge reviewed the petition, asked Mr. Lawrence for additional information, and ultimately referred the matter to the undersigned three-judge panel for decision. The undersigned judicial panel conducted a hearing, giving Mr. Lawrence an opportunity to demonstrate his fitness for admission. Rather than candidly address the Court's legitimate concerns, Mr. Lawrence returned to his well-worn playbook of deflecting blame for his own misconduct and of attacking decision makers whose decisions he does not like. This included specious allegations he made against this Court's Chief Judge.

On February 2, 2018, the Court denied Mr. Lawrence's petition for admission in a 35-page opinion recounting his long, contentious history with the Michigan State Bar, and his penchant for personally disparaging state bar officials and judicial officers who crossed his path. (*In re Petition for Admission*, Memorandum Opinion

and Order Denying Petition for Admission, Case No. 1:17-mc-0098, ECF No. 6, 2018 WL 10228439 (W.D. Mich. Feb. 2, 2018)). The Court gave Mr. Lawrence an opportunity to re-apply after three years. His re-application raises the same baseless allegations of misconduct against the Court's Chief Judge, and it provides incomplete answers to two of the questions on the application form. It does not address any of the Court's previously-stated concerns about his character and fitness to practice law. Accordingly, the Court gave him another opportunity to answer some simple, relevant questions. Mr. Lawrence's verified response to the Court's request for additional information can fairly be described as reckless, irrational, and even bizarre.

The Court is not competent to opine as to Mr. Lawrence's mental or psychological stability, but it is capable of ascertaining whether he possesses the "good moral and professional character" to be entrusted with the administration of justice as an attorney and officer of the Court. See W.D. MICH. LGENR 2.1(a). To the extent there was any remaining doubt concerning that issue, Mr. Lawrence's response has erased it. His re-application for admission to this Court will be denied.

## Procedural History

On October 5, 2017, Frank L. Lawrence, Jr., filed a petition for admission to the District Court for the Western District of Michigan. (ECF No. 1-2).[1] Given that Mr. Lawrence reported a conviction for interfering with a police officer, the Chief Judge sent him a letter, dated October 6, 2017, seeking additional information. (ECF

---

[1] Unless otherwise noted, all parenthetical record cites are to the docket in this matter: 1:17-mc-0098.

2

No. 1-3). On October 12, 2017, Mr. Lawrence responded to that letter, through counsel, providing some of the requested information. (ECF No. 1-4). The letter also accused the Chief Judge of accessing confidential information from Mr. Lawrence's State Bar of Michigan "confidential file." (*Id.* at PageID.12). The Chief Judge responded to that letter on October 16, 2017, notifying Mr. Lawrence's counsel of his decision to refer the petition for admission to a three-judge panel for decision. (ECF No. 1-5). In that letter, the Chief Judge advised that he had not received any information from the State Bar of Michigan. (*Id.* at PageID.18).

On December 4, 2017, Mr. Lawrence's counsel sent a letter to the chair of the three-judge panel, seeking the testimony of Ashley Mankin, who at the time was an employee of the Clerk's Office, in order to pursue Mr. Lawrence's allegation that the Chief Judge had obtained confidential information about him from files at the State Bar of Michigan. (ECF No. 1-6). Counsel also requested "a document akin to a bill of particulars" as to why Mr. Lawrence's petition was not approved by the Chief Judge. (*Id.* at PageID.20).

The undersigned judicial panel conducted a hearing on December 13, 2017, at which Mr. Lawrence and his counsel appeared. (Minutes, ECF No. 2). The Court advised Mr. Lawrence that it was denying his request to have Ms. Mankin testify, explaining that any testimony she could have provided would be irrelevant to the issues in Mr. Lawrence's petition. (Hr'g Tr. at 3, ECF No. 4, PageID.57). On December 27, 2017, Mr. Lawrence filed a motion for reconsideration of the Court's denial of his request for Ms. Mankin's testimony, in which he also argued that the

judicial panel lacked jurisdiction over his petition unless and until the Chief Judge made a determination as to his eligibility for admission to the Court. (ECF No. 3).

On February 2, 2018, the Court issued a memorandum opinion and order denying Mr. Lawrence's motion for reconsideration. (ECF No. 6, PageID.110-17, 142). The Court specifically found that the Chief Judge had not violated any local rule, nor had he engaged in any "irregularities" in the handling of Mr. Lawrence's petition, as suggested by Mr. Lawrence. (*Id.* at PageID.110-13). The Court found that Mr. Lawrence had waived any objection to the jurisdiction and constitution of the three-judge panel (*id.* at PageID.114), and, alternatively, that the panel had been properly constituted under the Court's local rules (*id.* at PageID.114-17).

The Court also denied Mr. Lawrence's petition for admission. (*Id.* at PageID.117-42). In reaching that decision, the Court noted Mr. Lawrence's "long history of engaging in inappropriate and unprofessional conduct that reflects, at the very least, very poor judgment." (*Id.* at PageID.142). The Court found that Mr. Lawrence "[was] willing to make unsubstantiated allegations of misconduct against those whose decisions he dislikes" (*id.* at PageID.140), and that he had "continued that pattern with his recent spurious allegations against this Court's Chief Judge." (*Id.* at PageID. 141). In conclusion, the Court determined that Mr. Lawrence had failed to demonstrate that he was " 'qualified to be entrusted with professional matters and to aid in the administration of justice as an attorney and officer of the

4

Court.' " (*Id.* at PageID.142 (quoting W.D. Mich. LCivR 83.1(c)(ii)).² Mr. Lawrence was allowed to re-apply for admission after a period of three years. (*See id.*).

Mr. Lawrence timely appealed that decision to the Sixth Circuit Court of Appeals. (ECF No. 7). On July 8, 2018, during the pendency of that appeal, Mr. Lawrence sent a letter to the Chief Judge, which the Chief Judge placed on the record. (ECF No. 9). The content of Mr. Lawrence's letter demonstrates that he remained preoccupied with his allegation that the Chief Judge had engaged in "improprieties" in the handling of his petition for admission, and that he was conducting an ongoing investigation into the judge's background. (*See id.*, PageID.183). The Chief Judge responded, noting, among other things, the impropriety of engaging in ex parte communications during the pendency of the appeal. (ECF No. 9-1).

On January 14, 2019, the Sixth Circuit affirmed this Court's decision denying Mr. Lawrence's petition for admission. *In re Frank J. Lawrence, Jr.*, 761 F. App'x 467 (6th Cir. 2019). The Sixth Circuit rejected Mr. Lawrence's argument that the Court committed reversible error in denying his request to have Ms. Mankin³ testify, finding: "Such testimony is of no bearing on Lawrence's character, the subject of the hearing. We thus decline to remand for further fact-finding on this issue, and

---

² The Court's local rules were amended, effective January 1, 2019. The applicable rules for attorney admission to practice in the Western District of Michigan are now found under Local General Rule 2.1.

³ The Sixth Circuit referred to Ms. Mankin as "the Chief Judge's clerk." *In re Frank J. Lawrence, Jr.*, 761 F. App'x 467, 472 (6th Cir. 2019). This, no doubt, is due to the fact that Mr. Lawrence referred to her as such. Ms. Mankin was an "Operations Specialist" for the Clerk's Office.

similarly decline to refer the Chief Judge to the Circuit Executive's Office." *Id.* at 472. The Sixth Circuit also held that the Court did not abuse its discretion in denying Mr. Lawrence's admission to this Court's bar. *Id.* at 476. The Supreme Court denied Mr. Lawrence's petition for writ of certiorari. *Lawrence v. United States District Court for the Western District of Michigan*, __ U.S. __, 140 S. Ct. 243 (Oct. 7, 2019).

Three years and a day after last being denied admission, Mr. Lawrence filed his pending re-application.[4] On February 23, 2021, the Chief Judge referred this matter to the undersigned three-judge panel. (ECF No. 14). On March 4, 2021, the undersigned judicial panel ordered Mr. Lawrence to supplement his re-application with additional information. (ECF No. 15). Mr. Lawrence has provided his verified response. (ECF No. 16, 17).[5]

## Legal Standards

This Court "has both statutory and inherent authority to control the membership of its bar." *In re Frank J. Lawrence, Jr.*, 761 F. App'x 467, 472 (6th Cir. 2019). That statutory authority is found in 28 U.S.C. § 2071, which allows a district court to set rules for the conduct of its business. That authority includes the ability to regulate the membership of its bar. *In re Desilets*, 291 F.3d 925, 929 (6th Cir. 2002)

---

[4] This is Mr. Lawrence's third attempt to be admitted to practice in this Court. His first petition was denied on May 1, 2009, due to the fact that he had not been admitted to practice law in any state. Mr. Lawrence unsuccessfully appealed that decision. *See In re Frank J. Lawrence, Jr.*, No. 09-1636, Slip Op. at 1 (6th Cir. Dec. 2, 2009) (unpublished) (a copy is filed in this matter at ECF No. 5).

[5] Mr. Lawrence submitted two duplicate responses, one to District Judge Neff, the chair of the three-judge panel (ECF No. 16), as instructed by the Court; the other he sent to the Clerk of the Court (ECF No. 17). The Court will cite to the former.

(citing 28 U.S.C. 1654); *see also Greer's Refuse Serv., Inc. v. Browning-Ferris Indus. of Delaware*, 843 F.2d 443, 446 (11th Cir. 1988) ("[F]ederal district courts have clear statutory authority to promulgate rules governing the admission and conduct of the attorneys who practice before them."); FED. R. CIV. P. 83 ("After giving public notice and an opportunity for comment, a district court, acting by a majority of its district judges, may adopt and amend rules governing its practice.").

"A federal district court has the 'inherent authority' to deny an attorney's application for admission to practice before that court." *Stilley v. Bell*, 155 F. App'x 217, 219 (6th Cir. 2005) (citing *In re Application of Mosher*, 25 F.3d 397, 399-400 (6th Cir. 1994)); *accord In re Desilets*, 291 F.3d at 929. This Court may "deny an attorney's application for admission to its bar when it is not satisfied that he possesses good private and professional character." *In re G.L.S.*, 745 F.2d 856, 859 (4th Cir. 1984). "[T]he exercise of the authority to admit, deny, or suspend an attorney is left to the discretion of the district court." *Stilley*, 155 F. App'x at 219 (citing *In re Snyder*, 472 U.S. 634, 643 n.6 (1985)).

Western District of Michigan Local Rule 2.1 governs the admission of attorneys. To be qualified for admission, an attorney must meet three requirements: (1) be admitted to practice before a court of record of a state; (2) be in good standing with that court of record of a state; and (3) be of "good moral and professional character." W.D. Mich. LGenR 2.1(a). Mr. Lawrence appears to meet the first two requirements (*see* ECF No. 18, PageID.233 (re-application for admission)); the question before the Court is whether he meets the third.

7

This Court must make an independent determination of whether Mr. Lawrence has demonstrated that he "possesses the professionalism and ethical competence expected of an officer of the court." *In re Mosher*, 25 F.3d at 400 (citing *In re G.L.S.*, 745 F.2d at 859). A review of the record in this matter demonstrates that he has not.

## Discussion

It should be noted at the outset, that Mr. Lawrence's nineteen-year-old misdemeanor conviction plays little part in the Court's decision. While the circumstances of that conviction indicate that Mr. Lawrence exercised extremely poor judgment, and that he demonstrated a lack of respect for the law, time and age should have addressed those deficiencies.[6] The Court is much more concerned with Mr. Lawrence's continued interest in harassing State Bar officials and with his obsession with pursuing baseless claims against the Court's Chief Judge, including an irrational suggestion that the Chief Judge is guilty of manslaughter. Sadly, it is evident that he has learned nothing from his past experiences, and that he lacks the

---

[6] It is, however, disconcerting that Mr. Lawrence continues to minimize his culpability concerning his conduct relating to that conviction. In his pending re-application, he again asserts that he was "ticketed" for violating a city ordinance for "interfering" with a police officer after telling the officer he "needed to secure a search warrant before conducting a warrantless search." (ECF No. 18, PageID.233). The record demonstrates, however, that Mr. Lawrence was arrested after repeatedly refusing to obey lawful orders of police officers who were engaged in a criminal investigation; that he repeatedly used abusive and profane language against the officers; and that he falsely testified as to his and the officers' actions during the trial resulting in his conviction. (*See* ECF No. 6, PageID.133-37).

8

character to conduct himself in the professional manner expected of officers of this Court.

The Court's February 2, 2018, memorandum opinion and order denying Mr. Lawrence's last application for admission documented his misconduct relating to his unsuccessful efforts to be admitted to the State Bar of Michigan. This included the public disparagement of State Bar officials, which was calculated to cause embarrassment and financial harm, rather than serve any legitimate effort to be admitted to the bar. (*See* ECF No. 6, PageID.126-33, 137-42). Mr. Lawrence also raised baseless allegations of misconduct against a state court district judge who offered in 2002 to help Mr. Lawrence advance his application with the State Bar of Michigan Character and Fitness Committee. (*See id.* at PageID.123-25).

Having reviewed his verified response to the Court's latest query, it is evident that Mr. Lawrence remains obsessed with his claim that this Court's Chief Judge engaged in "judicial misconduct" in the initial handling of his October 5, 2017, petition for admission. (ECF No. 16, PageID.213-16, He also acknowledges that he has been engaged in "extensive research" into the Chief Judge's purported misconduct. (*Id.* at PageID.219-20). Mr. Lawrence's stubborn refusal to let go of this issue is telling. First, the record demonstrates that the Chief Judge did nothing wrong. Second, both this Court and the Court of Appeals have pointed out to Mr. Lawrence the irrelevance of the Chief Judge's handling of the initial application. The Chief Judge had no part in the undersigned judicial panel's decision to deny Mr. Lawrence's last petition for admission.

Mr. Lawrence continues to demonstrate a penchant for personally attacking officials whose decisions he dislikes, including a willingness to make baseless, unsubstantiated allegations. He has not learned the lesson this Court and others have tried to teach him.

Moreover, Mr. Lawrence's obsession with the Chief Judge appears to have taken a dark turn. He now suggests that the Chief Judge is responsible for the death of Ms. Mankin, who tragically died in 2018 as a result of pulmonary embolisms, and he is calling for a "full investigation." (ECF No. 16, PageID.215). These allegations go beyond rank speculation. They can only fairly be described as reckless, irrational, and even bizarre. The impropriety of making these baseless assertions is patent, and it tends to undermine public confidence in this Court.

In his verified response, Mr. Lawrence also acknowledges a continued interest in going after individual members of the State Bar of Michigan Character and Fitness Committee. He notes: "I am in the process of making inquiries with private investigative firms with the intention of hiring one or more of those entities to investigate and report whether certain state officials have engaged in conduct that calls into question their ability to serve the public." (ECF No. 16, PageID.218). This is reminiscent of his previous efforts to harass and humiliate State Bar officials. As the Michigan Board of Law Examiners previously noted, instead of working solely within the appellate process, Mr. Lawrence chooses to attack the individuals who make the decisions. Mr. Lawrence has " 'show[n] a propensity to act other than in a 'fair' manner. He has not shown that he will exercise good judgment, that he will

conduct himself professionally and with respect for the law.' " (ECF No. 6, PageID.131 (quoting *In re Frank J. Lawrence, Jr.*, Board of Law Examiners Opinion (June 14, 2006), found at *Lawrence v. Berry*, Case No. 5:06-cv-134, ECF No. 1-2, PageID.20-21 (W.D. Mich. Sept. 9, 2006)).

This Court places a high premium on civility and in maintaining the public's confidence in both the legal profession and the judicial system. "[I]t is extremely desirable that the respectability of the bar should be maintained, and that its harmony with the bench should be preserved." *Ex Parte Burr*, 22 U.S. 529, 530 (1824). Mr. Lawrence's proclivity for engaging in personal attacks against decision makers, including judicial officers, is contrary to what the Court expects from "a profession dedicated to the peaceful and reasoned settlement of disputes" between individuals, and between individuals and their government. *Law Students Civil Rights Research Council, Inc. v. Wadmond*, 401 U.S. 154, 166 (1971). The Sixth Circuit has acknowledged that this Court "is constitutionally entitled to look at such conduct in deciding whether [Mr.] Lawrence should be admitted." *In re Frank J. Lawrence, Jr.*, 761 F. App'x at 47.[7]

---

[7] This Court has considered the fact that Mr. Lawrence has been admitted to practice before other federal courts. But this Court is not cognizant of what information the other courts had or considered in making the decision to admit him; nor is the Court privy to Mr. Lawrence's conduct in the handling of a limited number of pro bono cases in another district. This Court can – and must – make an independent decision as to whether Mr. Lawrence meets the requirements for admission in this district. *See Stilley v. Bell*, 155 F. App'x 217, 224 (6th Cir. 2005) ("[O]ne court's decision to admit an applicant does not diminish another court's discretion to refuse to do so.").

In the December 13, 2017, hearing regarding his previous application for admission, Mr. Lawrence was asked why, given his previous misconduct, this Court should conclude that he has sufficient good judgment to be admitted. He responded: "What I can tell you is I am not the same person. I have grown older and wiser and slower, and I've developed an appreciation for respect and an appreciation for resolving things amicably without turning it into a big deal." (Hr'g Tr. at 45, ECF No. 4, PageID.99). His actions continue to speak louder than his words.

## Conclusion and Order

For the reasons stated herein, as well as those articulated in the Court's Memorandum Opinion and Order of February 2, 2018, the undersigned judicial panel finds that Mr. Lawrence has failed to establish that he possesses the "good moral and professional character" required for admission to practice in this Court. Accordingly, Mr. Lawrence's re-application for admission to practice in the District Court for the Western District of Michigan is **DENIED**.

**IT IS SO ORDERED**.

Dated: April 28, 2021 /s/Janet T. Neff
JANET T. NEFF
United States District Judge

Dated: April 28, 2021 /s/Scott W. Dales
SCOTT W. DALES
Chief United States Bankruptcy Judge

Dated: April 28, 2021 /s/Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge